UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

INESSA G. BATYUKOVA,

    Plaintiff,

v.                                                                          No. 5:19-cv-00391-JKP

BRANDON LEE DOEGE, #1282;
BEXAR COUNTY AND
ITS SHERIFF'S OFFICE,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is *Bexar County's Motion to Dismiss* (ECF No. 37) to which Plaintiff responded (ECF No. 39) and Defendant replied (ECF No. 41). Plaintiff brings this civil rights action against the named Defendants in relation to an incident during which she was shot by a Bexar County Detention Officer. Defendants Bexar County and the Bexar County Sheriff's Office move the Court to dismiss Plaintiff's *Monell* claims pursuant to Federal Rule of Civil Procedure 12(b)(6). After careful consideration of the memoranda in support of and in opposition to the motion, the Court, for the following reasons, GRANTS the motion.

### I. Factual allegations

Plaintiff Inessa G. Batyukova's ("Batyukova") First Amended Complaint, the operative pleading herein, alleges on June 28, 2018, Batyukova was traveling from San Antonio to Eagle Pass on U.S. Highway 90. ECF No. 5 at 4. At approximately 11:30 p.m., Batyukova stopped her vehicle in the left lane of the highway and activated the hazard lights. *Id.* Approximately five

minutes later, Bexar County Sheriff's Deputy Brandon Lee Doege ("Doege") pulled up behind Batyukova's car, alighted his vehicle,[1] identified himself as a Deputy, and ordered Batyukova out of her car. *Id.*[2] Batyukova alleges she slowly exited her car and slowly walked toward Doege— "obviously unarmed," with her hands in the air, and speaking "offensive expletives" directed at Doege—until she stood between his car and hers. *Id.* at 5. Batyukova further alleges Doege aimed his gun at her, "started screaming," and ordered her to place her hands on the car. *Id.* As Batyukova "moved her arm" to comply with the order, Doege discharged his weapon five times, striking Batyukova in the right arm, shoulder, leg, and stomach. *Id.* at 5-6. Batyukova "dropped on the ground several feet in front of Doege's car and started bleeding." *Id.* at 6. Batyukova further alleges Doege radioed for assistance but otherwise rendered no medical aid to her. *Id.* at 6-7. Emergency personnel arrived on scene at 11:49 p.m. and transported Batyukova to Castroville Airport where she was flown by Airlife to University Hospital in San Antonio. *Id.*

**II. Legal Standard**

When presented with a motion to dismiss under Rule 12(b)(6), a court generally "must assess whether the complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face[.]" *United States v. Bollinger Shipyards Inc.*, 775 F.3d 255, 257 (5th Cir. 2014) (internal citations and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must

---

[1] . . . "privately-owned Grey Dodge Charger" "with red and blue police emergency lights activated." *Id.* ¶ 17.

[2] "Defendant Doege opened the driver door of this car and screamed to Ms. Batyukova that he is a Bexar County Deputy." *Id.* ¶ 18.

establish more than a "sheer possibility" a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In assessing a motion to dismiss under Rule 12(b)(6), the court's review is generally limited to the complaint and any documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's claims. *Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). When reviewing the complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation marks omitted) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). A court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

**III. Discussion**

**A. Bexar County Sheriff's Office**

Police and sheriff's departments are governmental subdivisions without capacity for independent legal action. *Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1991). For this reason, the Bexar Sheriff's Office is not a legal entity capable of being sued. *Id.*; *see Guidry v.*

*Jefferson Cty. Det. Ctr.*, 868 F. Supp. 189, 191 (E.D. Tex. 1994). Where a plaintiff has incorrectly named the department rather than the municipality and the defendant will not be prejudiced by the amendment, the appropriate disposition is dismissal with leave to amend. *See Parker v. Fort Worth Police Dep't*, 980 F.2d 1023, 1026 (5th Cir. 1993). Here, Batyukova has named the correct defendant, Bexar County. Accordingly, dismissing the Bexar County Sheriff's Office from the action is appropriate.

**B. Bexar County**

Batyukova's First Amended Complaint alleges Doege acted in accordance with his training when he shot Batyukova and did not personally provide any medical treatment. Specifically, Batyukova alleges the following: (1) "The defendants, in standing around allowing a woman, who had been shot multiple times by Defendant Doege and lay bleeding in the street, all acted in a way that . . . demonstrates that they were all acting in accordance with their training;" (2) "Doege's training, per Bexar County and its sheriff's office, was that he should not only shoot Ms. Batyukova as he did, but then to decline to provide any treatment;" (3) "the named individual defendants acted in accordance with their training, thereby proving that their training was inadequate, and such inadequacy was a driving force behind the violations of Ms. Batyukova's constitutional rights." ECF No. 5 ¶¶ 98, 100, 103-04. Batyukova further alleges Doege was not disciplined "in any way" for his conduct on the night he shot her. *Id.* ¶ 99. Thus, it appears Batyukova is alleging a *Monell* claim against Bexar County based upon inadequate training and ratification theories. ECF No. 5 at 14-16.

**1. Inadequate Training Theory of Municipal Liability**

A plausible inadequate training claim alleges facts that allow the court to draw the reasonable inference that "(1) the municipality's training procedures were inadequate; (2) the

municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the constitutional violation." *Saenz v. City of El Paso*, 637 F. App'x 828, 831 (5th Cir. 2016) (citing *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015)). Batyukova can meet the *Iqbal-Twombly* pleading standard by alleging the County had "actual or constructive notice" that inadequate training caused employees "to violate citizens' constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Notice can be alleged with a "pattern of similar constitutional violations." *Id.* at 61. To plausibly allege circumstances that support single incident liability, Batyukova must allege facts which demonstrate the specific injury she suffered is a "patently obvious" or "highly predictable" result of inadequate training. *Id.* at 62-63.

Batyukova's First Amended Complaint alleges no facts from which the Court can infer that Bexar County is responsible for her injury. Accepted as true, Batyukova's allegations—without cause or justification Doege shot her four times—do not implicate Bexar County. The Supreme Court in *Monell*, held that a local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) (local governments are responsible only for their own illegal acts).

At this stage of the proceedings, "the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Groden v. City of Dall.*, 826 F.3d 280, 284 (5th Cir. 2016). In other words,

Batyukova need not identify the specific policy at this time. However, a plaintiff must plausibly allege "both the causal link ('moving force') and the city's degree of culpability ('deliberate indifference' to federally protected rights)." *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998). Batyukova's First Amended Complaint contains no facts that show, or allow the Court to infer, any policy, custom, or practice related to Bexar County's officer training was the moving force behind the alleged violation of her constitutional rights. And, under the single incident exception, Batyukova's pleadings are so sparse, a finding that Batyukova's injury is a "patently obvious" or "highly predictable result" of inadequate training would be to find that any allegation made in the context of an officer involved shooting sufficiently alleges a *Monell* claim for inadequate training. Batyukova's pleading invites the Court to conclude her allegation standing alone—without cause or justification Doege shot her four times—is sufficient to state a *Monell* claim for inadequate training at the motion to dismiss stage. Such conclusion is contrary to well established law. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (emphasis added).

**2. Ratification Theory of Municipal Liability**

Ratification chargeable to a municipality requires that "authorized policymakers approve a subordinate's decision and the basis for it." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). The only allegation in Batyukova's First Amended Complaint with respect to stating a *Monell* claim based on ratification, is "Doege, through his actions and inactions, implicates the County of Bexar and its sheriff's office because he was not disciplined in any way." ECF No. 5 ¶ 99. In the absence of factual allegations showing an official policy, custom, or practice, the Fifth Circuit has held that, in certain "extreme factual situations[,]" a Section 1983 plaintiff may

establish a policy or practice by showing that "the failure to react" to a "gross an abuse of the use of deadly weapons" can be "sufficient to show an official policy of condoning such abuses." *Fuentes v. Nueces Cty., Texas*, 689 F. App'x 775, 779 (5th Cir. 2017) (discussing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985)). Batyukova alleges Doege fired upon her without any cause or provocation and then left her lying in a pool of blood until EMS arrived. Consequently, it may be reasonable to find that Batyukova has alleged an extreme factual situation. However, because Batyukova has made only a conclusory allegation that Bexar failed to react by not disciplining Doege, the Court does not find a plausible claim of municipal liability based on ratification. Speculation is insufficient to save a claim from dismissal under Rule 12(b)(6) and, on the facts alleged, the Court finds no reasonable inference that Bexar County ratified the alleged misconduct of Doege.

**C. Leave to Amend**

In her Response to Bexar County's Motion, Batyukova reverses course. In her First Amended Complaint Batyukova alleges Defendant Doege knew, "*through [his] training and experience*" that Batyukova may have minutes to live; that he acted "*in accordance with [his] training;*" and that *Doege's training* by Bexar County was that he should shoot Batyukova and then decline to provide medical care. *See* ECF No. 5 ¶¶ 86, 98, 100, 103-04 (emphasis added). Batyukova's Response alleges Doege was "acting according to his *lack of training;*" that his "conduct *evidences a complete lack of training* on the use of force and on his constitutional duty to provide medical attention to individuals injured by the police;" and his conduct was "an obvious consequence of a county's act of equipping a detention officer with a gun *without providing training* on the use of a deadly weapon or on the proper steps to take after discharging a gun on someone." ECF No. 39 at 4, 9, 10 (emphasis added).

7

Batyukova's Response contends she has alleged sufficient facts to show municipal liability (1) under a single-incident failure to train theory and (2) under a theory of ratification for Defendant Bexar County's failure to discipline Defendant Doege. *Id.* at 2. The single-incident exception exists only "where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Westfall v. Luna*, 903 F.3d. 534, 552 (5th Cir. 2018) (quoting *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003)). Allegations that a municipality's failure to provide training to municipal employees resulted in the constitutional deprivation suffered can only yield liability where the alleged failure to train "reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). A single incident allegation does not relieve a plaintiff of pleading facts that plausibly allege that the failure to train was "so likely to result in the violation of constitutional rights, that the policymaker of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

Batyukova alleges and Bexar County appears to concede Doege was a detention officer at the time of the incident. ECF Nos. 39 at 4; 41 ¶¶ 6, 8. Batyukova's Response intones Bexar County did not equip detention officers with the training necessary for Doege to navigate the encounter he had with her. In support of her contention that Bexar County's training ill-equips detention officers to deal with encounters with citizens, Batyukova points the Court to the Detention Officers page of the Bexar County Sheriff's Office ("BCSO") website. Based on the information found therein, Batyukova alleges Doege received "no other training" than that of a detention officer, which, she alleges, is to "control, secure and manage inmates at the Adult Detention Center and Jail Annex." ECF No. 39 at 10. The Bexar County website on which

Plaintiff relies also notes that detention officers receive fourteen weeks of training including BCSO policies, procedures, and state law; skills/tactics training; weapons training; and, *inter alia*, are trained in "responding to and resolving crisis situations such as fights, fires and medical emergencies and restraining physically violent inmates[.]"[3]

Relying in part on the Medina County's Incident/Offense Report, Batyukova further alleges that Doege shooting her was an "obvious consequence" because Bexar County only provided him with detention officer training and then, "armed Defendant Doege with a deadly weapon, police lights and flashers." ECF No. 39 at 10. Bexar County replies that at the time of the incident, it had not issued a firearm to Deputy Doege and the "Incident Report—while at one point referring to the handgun as a 'duty weapon'—notes that firearm was not issued by Bexar County, but was Deputy Doege's personally owned handgun." ECF No. 41 at 5 n.2. Bexar County further replies that "State law provides that state licensed peace officers are authorized to carry their weapons in public places 'regardless of whether the peace officer or special investigator is engaged in the actual discharge of the officer's or investigator's duties while carrying the weapon.'" *Id.* at 5 (quoting Tex. Code Crim. Proc. art. 2.1305(a)).

Rather than pointing to a lack of training, Batyukova shows that Bexar County provides fourteen weeks of training at the academy, requires passage of the TCOLE state exam, and delivers three additional weeks of hands-on training to detention officers. Consequently, Batyukova has not plausibly alleged that Bexar County can "reasonably be said to have been deliberately indifferent to the need [for training]." *City of Canton*, 489 U.S. 390. Additionally,

---

[3] *See* https://www.bexar.org/2252/Detention-Officers (last visited Dec. 6, 2019), which also provides: "At the end of the training, Cadets must take the Texas Commission on Law Enforcement (TCOLE) state exam to receive a jailer's license. Following the Academy, new Detention Officers will undergo a three (3) week Detention Training period (DTO) in which they will shadow a Detention Training Officer for hands-on experience."

the Incident Report Batyukova relies on shows Bexar County did not arm Doege with a deadly weapon; the gun was his personal property, which a peace officer is authorized to carry under Texas law. *See* ECF Nos. 41-1 at 3-4; 41 at 5 n.2 (quoting Tex. Code Crim. Proc. art. 2.1305(a)). *See also* Tex. Penal Code §§ 46.02; 46.03; 46.15 (distinguishing between peace officers and corrections department officers' rights to carry weapons off-duty).

With respect to her ratification argument, Batyukova alleges that Doege's actions demonstrate "extreme misconduct" and, because Bexar County "investigated but did not discipline" Doege, the County ratified his conduct. ECF No. 39 at 9. Batyukova's Response points the Court to a news report in support of her allegation that Bexar County ratified Doege's conduct when it did not discipline him. ECF No. 39 at 8. The news report states that Deputy Doege, a detention officer, "is on administrative leave as the department investigates."[4] Here again, rather than bolstering her allegation that Bexar County failed to react and thereby ratified Doege's conduct, Batyukova demonstrates that Bexar County undertook an investigation of the incident and placed Doege on administrative leave while doing so. Further, "[g]ood faith statements made in defending complaints against municipal employees do not demonstrate ratification." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010).

Dismissal with prejudice is appropriate if a court finds the plaintiff has alleged his or her best case. *Greninger*, 188 F.3d at 327 *accord Fregia v. Bright*, 750 F. App'x 296, 299 (5th Cir. 2018) (where a plaintiff has had several opportunities to state a cognizable claim and has pled her best case, the court need not authorize another amendment) (citing *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)). Prior to the Court's consideration of the subject motion, Batyukova had the benefit of Doege's Motion to Dismiss, after which she amended her complaint. *See* ECF Nos. 4, 5, 8. Next, Batyukova had the

---

[4] https://foxsanantonio.com/news/local/deputy-shoots-stranded-driver-he-stopped-to-help (last visited Dec. 6, 2019).

benefit of the City of Castroville and Medina County's motions to dismiss, their replies to her responses, and this Court's Memorandum Opinion. *See* ECF Nos. 19, 22, 38, 42, 43. In the subject pleadings, Batyukova alleged both that Bexar County's training was specific and improper, and that Bexar County provided no training at all. What Batyukova did not allege were any facts from which the Court could draw a reasonable inference that any policy, custom, or practice was the moving force behind the violation of her constitutional rights, nor that Bexar County was deliberately indifferent in adopting its training policy. Consequently, the Court finds Batyukova has alleged her best case.

**IV. Conclusion**

For the reasons set forth above, the Court GRANTS Defendant Bexar County's Motion to Dismiss (ECF No. 37).

Accordingly, it is ORDERED:

1. The Court GRANTS Bexar County's Motion to Dismiss (ECF No. 37).

2. Bexar County is DISMISSED from the action.

3. Bexar County Sheriff's Office is DISMISSED from the action.

4. Plaintiff Inessa G. Batyukova hereby takes nothing as to her claims against Bexar County and the Bexar County Sheriff's Office.

5. A Partial Final Judgment consistent with this Memorandum Opinion shall be filed contemporaneously herewith.

It is so ORDERED.

SIGNED this 9th day of December 2019.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE