UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

INESSA G. BATYUKOVA,

    Plaintiff,

v.                                                                                                        No. 5:19-cv-0391-JKP-ESC

BRANDON LEE DOEGE, #1282,

    Defendant.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Brandon Lee Doege's ("Doege") Motion for Summary Judgment (ECF No. 59), Plaintiff Inessa G. Batyukova's ("Batyukova") Response (ECF No. 68), and Doege's Reply (ECF No. 76) and Batyukova's Motion for Summary Judgment (ECF No. 60), Doege's Response (ECF No. 70), and Batyukova's Reply (ECF No. 77). After due consideration, the Court concludes Doege's Motion for Summary Judgment shall be GRANTED, and Batyukova's Motion for Summary Judgment shall be DENIED.

**PROCEDURAL HISTORY**

Batyukova initiated this action on April 15, 2019, amending her complaint on May 28, 2019. ECF Nos. 1, 5. On October 29, 2019, this Court dismissed all claims against Medina County and its Sheriff's Office, Mark Powell, Robert Schaff, Jerry Allen Thomas, Marcos Aguilar, and the City of Castroville and its Police Department and, on November 6, 2019, entered partial final judgment in favor of these defendants. ECF Nos. 43, 46. On December 9, 2019, this Court dismissed all claims against Bexar County and its Sheriff's Office and entered partial final judgment in favor of these defendants. ECF Nos. 48, 49. Thus, Brandon Doege is now the sole defendant against whom Batyukova alleges three 42 U.S.C. § 1983 claims: fourth

amendment excessive force (Counts I and II), first amendment retaliation (Count III), and fourteenth amendment medical care (Count IV). ECF No. 5. Doege moves for summary judgment on all claims, arguing he is entitled to qualified immunity and the evidence shows he did not retaliate against Batyukova nor did he delay medical care. ECF No. 59. Batyukova moves for summary judgment on her claim of excessive force, arguing no reasonable officer would have discharged his firearm in the situation Doege encountered. ECF No. 60.

## BURDEN OF PROOF

The Court will grant summary judgment if the record shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and designate competent summary judgment evidence "showing that there is a genuine [dispute] for trial." *Adams*, 465 F.3d at 164; *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). The parties may satisfy their respective burdens by "tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

When ruling on a motion for summary judgment, the Court must view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, *Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods.*, *Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55. However, when the nonmoving party fails "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music*, *Inc. v. Bentley*, Civil Action No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

"The court also considers 'evidence supporting the moving party that is uncontradicted and unimpeached.'" *Gordon v. Acosta Sales & Mktg.*, *Inc.*, No. SA-13-CV-662-XR, 2014 WL 7339117, at *3 (W.D. Tex. Dec. 22, 2014), *aff'd*, 622 F. App'x 426 (5th Cir. 2015) (quoting *Reeves*, 530 U.S. at 151). "Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted." *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001) (citing *Dukes v. S.C. Ins. Co.*, 770 F.2d 545, 548-49 (5th Cir. 1985)). Therefore, "they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record." *Id*.

At summary judgment, a court may assign greater weight to "facts evident from the video recordings taken at the scene." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011).

**DISCUSSION**

On January 16, 2020, Doege propounded his first set of requests for admission. *See* ECF No. 78 at 1. Under Fed. R. Civ. P. 36, Batyukova's response was due no later than February 18, 2020.[1] When February 17 arrived with no response, Doege's counsel emailed Batyukova's counsel, who confirmed the response would be provided at or prior to a deposition scheduled for March 5, 2020, which was also the final day of discovery. ECF No. 78 at 2. The deposition went forward and discovery closed with no response to the requests. *Id.* On March 30, 2020, Doege filed his motion for summary judgment. ECF No. 59. In the motion, Doege argued Batyukova's deemed admissions establish she reached toward her waistband immediately before he fired at her, and, therefore, there was no genuine dispute of fact regarding whether she did so. *Id.* at 5. The next day, Batyukova served her responses to the requests for admission. *See* ECF No. 78 at 2.

On April 13, 2020, Batyukova filed a motion to amend her discovery responses. ECF No. 69. On April 23, 2020, after hearing arguments of the parties, United States Magistrate Judge Elizabeth S. Chestney, in a well-reasoned order, denied the motion. ECF No. 78. Judge Chestney found Batyukova failed to adequately justify the reasons for her delay particularly in light of the opportunities Batyukova had to cure, including the email from Doege's counsel, which alerted her to her mistake and gave her the opportunity to correct it prior to her deposition. *Id.* at 4. Judge Chestney further found Doege would be prejudiced by allowing Batyukova to amend her admissions because the deemed admissions were consistent with evidence in the record and the

---

[1] The Federal Rules of Civil Procedure provides "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). February 17, 2020, was a Federal holiday. *See* Fed. R. Civ. P. 6(a)(1)(A)-(C).

dilatory manner in responding to the missed deadlines was sufficient to prevent the admissions from being withdrawn. *Id*. Accordingly, the following facts are deemed admitted:

At approximately 11:30 p.m., on the evening of June 28, 2018, Batyukova was traveling westbound on U.S. Highway 90. She stopped her car in a travel lane of U.S. Highway 90 in Medina County, even though visibility on the roadway was limited and the vehicle remained running, was in an operational condition, and she had the ability to either continue driving or to pull over to avoid obstructing a traffic lane. Deputy Brandon Doege stopped behind Batyukova's vehicle and immediately contacted emergency dispatch services. Deputy Doege identified himself to the dispatcher and reported the disturbance created by Batyukova. Deputy Doege instructed Batyukova to show her hands and to place her hands on the hood of her vehicle; she did not comply. Batyukova displayed her extended middle finger to Deputy Doege and shouted at him, "fuck you," "fuck America," and "I hate America." Batyukova walked away from her vehicle and towards Deputy Doege's vehicle as he backed his vehicle away from her. Deputy Doege asked Batyukova, "what is going on?" She did not respond. He again instructed her to show her hands and instructed her to "get down." She did not comply. She again shouted, "fuck you." Batyukova reached toward the waistband of her pants because she intended to lower her pants in order to display her buttocks to Deputy Doege. After firing his weapon at Batyukova, Deputy Doege immediately informed the emergency dispatcher shots had been fired, Batyukova was injured, and requested assistance. ECF No. 59-7 at 3-4.

**1. First Amendment Retaliation Claim**

The parties do not dispute Batyukova's speech was constitutionally protected and being shot "would chill a person of ordinary firmness from continuing to engage in that activity." *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). The parties disagree as to whether Doege

shot Batyukova because she swore at him, made disparaging remarks about America, or threatened death to America and Doege. Batyukova contends Doege shot her "in response to her criticism of him and her exercising of her First Amendment right." ECF No. 68 at 16. Doege argues Batyukova cannot show her speech was the sole motivation for his use of force because Batyukova was hostile, did not obey his repeated orders, moved toward him, and reached behind her back. ECF No. 59 at 11, 13.

To prevail on a First Amendment retaliation claim, a plaintiff must establish a but-for causal connection "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman* v. *Moore*, 547 U.S. 250, 259-60 (2006).

Batyukova's admissions establish: (1) she did not comply with Doege's orders to display her hands; (2) she walked toward Doege's vehicle; (3) Doege backed his vehicle away from her; (4) she reached toward her waistband. ECF No. 59-7 ¶¶ 11-23. The summary judgment evidence submitted by the parties supports these deemed admissions by showing: (1) Batyukova ignored six separate orders to either show her hands or place her hands on her vehicle; (2) she walked toward Doege's vehicle; (3) Doege backed his vehicle away from her; (4) after she shouted expletives, Doege asked her, "What's going on ma'am?" Video Exhibits 00:00-01:24.[2]

Batyukova did not present evidence that her speech and expressive conduct was a but-for cause of the shooting. Thus, Batyukova cannot establish Doege shot her in retaliation for her protected conduct and Doege is entitled to summary judgment on Batyukova's retaliation claim.

---

[2] Defendant's Exhibits A-1 and A-2 and Plaintiff's Exhibits 3 and 4. Composite of emergency dispatch call audio recording and surveillance camera video footage from storage facility. Exhibits include original frame (distance-view) and enlarged frame (zoomed and cropped).

## 2. Fourteenth Amendment Medical Care Claim

Batyukova's need of medical care is not disputed. The parties disagree as to whether Doege was deliberately indifferent to the need. Doege contends the undisputed facts establish he was not deliberately indifferent to Batyukova's need for care because he immediately summoned EMS. ECF No. 59 at 18-20. Doege further argues Batyukova cannot prevail on this claim because she was not harmed by any delay in receiving care. *Id*. Batyukova responds Doege was deliberately indifferent because he provided no medical care and she lost approximately 1500 milliliters of blood before EMS arrived and was therefore "under a significantly increased risk of death." ECF No. 60 at 19; 68 at 3, 18-19.

When a state restrains an individual's liberty, a corresponding duty arises to provide "constitutionally adequate care." *M.D. v. Abbott*, 907 F.3d 237, 249-50 (5th Cir. 2018). Liability does not attach in a medical care claim "unless the official had subjective knowledge of a substantial risk of serious harm . . . but responded with deliberate indifference to that risk." *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). A delay in medical care constitutes a constitutional violation where the deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Westfall v. Luna*, 903 F.3d 534, 551 (5th Cir. 2018).

Here, when Doege shot Batyukova he was a state actor who restrained her liberty. Consequently, a duty arose, which required Doege to provide constitutionally adequate medical care to Batyukova. *See Abbott*, 907 F.3d at 249-50. The deemed admissions establish Doege did so: (1) Doege immediately informed emergency dispatchers Batyukova was injured and (2) Doege immediately requested assistance. ECF No. 59-7 ¶¶ 26-27. Three pieces of evidence submitted by the parties support the deemed admissions. First, EMS was immediately summoned

because Doege was connected by mobile phone to a 911 dispatcher. Video Exhibits at 03:00-03:10. Second, after looking inside Batyukova's vehicle to see if anyone else was present, Doege returned to his vehicle in search of his first aid kit. Doege Dep. ECF No. 59-4 at 10:11-18. Third, after assisting Doege with clearing the scene, a Medina County deputy approached Batyukova, found her breathing and responsive, and attempted to keep her talking until EMS arrived. Incident Report ECF No. 59-6 at 5.

Based upon the deemed admissions and the evidence presented, Doege was not deliberately indifferent to Batyukova's need for medical care. Additionally, Batyukova presented no evidence of harm caused by a delay in receiving medical care. Accordingly, Doege is entitled to summary judgment on Batyukova's delay of medical care claim.

**3. Fourth Amendment Excessive Force Claim**

To establish a Fourth Amendment excessive-force claim, a plaintiff must show "she suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable." *Westfall*, 903 F.3d at 547 (quoting *Flores v. Palacios*, 381 F.3d 391, 396 (5th Cir. 2003)). In determining whether force was objectively unreasonable, courts examine "the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether [she] is actively resisting arrest or attempting to evade arrest by flight." *Id*. (quoting *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The defense of qualified immunity protects government officials from liability for civil damages in individual-capacity suits unless the officer's conduct was unreasonable in light of clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The inquiry in a

qualified immunity analysis asks (1) whether, when taken in the light most favorable to the injured party, the facts alleged show the officer's conduct violated a federal right and (2) whether that right was clearly established at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Batyukova's admissions conclusively establish: (1) Doege gave numerous orders/instructions and Batyukova did not comply; (2) Batyukova walked toward Doege's vehicle; (3) Batyukova reached her hands toward her waistband. ECF No. 59-7 ¶¶ 9-11, 16, 21, 23. Evidence submitted by the parties supports Batyukova's admissions by showing: (1) Batyukova ignored six separate orders to show her hands or put her hands on her vehicle; (2) she walked toward Doege's vehicle; (3) she reached toward her waistband. Video Exhibits at 00:00-01:24; ECF No. 59-8 (KENS 5 interview); Def. Ex. D at 3:32-03:40 (Batyukova's statement to Medina County investigators). The video exhibits are inconclusive as to whether Batyukova reached toward her waistband.

This case is resolved at the first prong: whether the facts alleged show the officer's conduct violated a federal right. Based on Batyukova's deemed admissions and the supporting evidence, the Court concludes a reasonable officer in Doege's position would have believed Batyukova posed an immediate threat to his safety. Because Doege's decision to use deadly force was objectively reasonable under the circumstances, the facts cannot support a finding of excessive force in violation of the Fourth Amendment. Accordingly, Doege is entitled to summary judgment on Batyukova's excessive force claim.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant Brandon Lee Doege's Motion for Summary Judgment (ECF No. 59). Plaintiff Inessa G. Batyukova's Motion for Summary Judgment (ECF No. 60) is DENIED. The Clerk is DIRECTED to enter judgment in favor of Defendant Brandon Lee Doege and close this case.

It is so ORDERED.

SIGNED this 15th day of May 2020.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE